IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ESTATE OF MIGUEL ROBLES, ) <br> By Maria Montiel as Next of Kin and ) <br> Surviving Spouse of Miguel Robles, and ) <br> MARIA MONTIEL, Individually, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> VANDERBILT UNIVERSITY, et al., ) <br> ) <br> Defendants. ) | No. 3:11-cv-00399 <br> Judge Nixon <br> Magistrate Judge Griffin <br><br> JURY DEMAND |

### ORDER

Pending before the Court is Plaintiffs Estate of Miguel Robles and Maria Montiel's Motion to Strike Affirmative Defenses ("Motion"). (Doc. No. 15.) Defendants Vanderbilt University, et al. filed a Response in Opposition. (Doc. No. 16.) For the reasons stated herein, Plaintiffs' Motion is **GRANTED in part** and **DENIED in part**.

I. **BACKGROUND**

Miguel Robles presented to Vanderbilt University Medical Center on October 18, 2008, with injuries sustained in a car accident. (Doc. No. 1 ¶ 17.) Plaintiffs allege that Mr. Robles was given a cognitive function test upon his arrival and received the highest possible score, indicating normal cognitive function. (*Id.* ¶¶ 19-20.) Plaintiffs allege that Defendants failed to properly treat Mr. Robles, leading to an anoxic brain injury that left him brain dead and ultimately caused his death. (*Id.* ¶¶ 27-29.)

Plaintiffs previously filed this lawsuit for medical malpractice in the Circuit Court of Davidson County, Tennessee on March 4, 2010. (*Id.* ¶ 10.) Defendants filed a motion to dismiss

1

in the Circuit Court for Plaintiffs' failure to file a certificate of good faith in compliance with the requirement of Tenn. Code Ann. § 29-26-122.[1] (Doc. No. 16 at 2.) Plaintiffs subsequently non-suited the case, and the Circuit Court entered an order allowing the non-suit on June 5, 2010. (*Id.*; Doc. No. 1 ¶ 11.) Defendants appealed the entry of the non-suit, moving for resolution of its motion to dismiss instead. (Doc. No. 16 at 2.) The Tennessee Court of Appeals affirmed the non-suit and held that § 29-26-122 did not preclude Plaintiffs from voluntarily dismissing their case. (*Id.*) The Tennessee Supreme Court denied Defendants' application for further appeal. (*Id.*)

Plaintiffs re-filed their lawsuit in this Court on April 28, 2011. (Doc. No. 1.) Defendants filed an Answer on September 6, 2011, asserting four affirmative defenses: failure to state a claim upon which relief can be granted, statute of limitations, comparative fault, and failure to file a certificate of good faith in the Circuit Court for Davidson County. (Doc. No. 12 at 1, 7.) On September 26, 2011, Plaintiffs moved to strike three of the affirmative defenses. (Doc. No. 15.) Defendants filed a Response in Opposition on October 10, 2011. (Doc. No. 16.)

**II. LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Sixth Circuit has recognized that "the action of striking a pleading should be sparingly used by the courts," calling it "a drastic remedy to be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (citations omitted). "The motion to strike should be granted only when the pleading to be

---

[1] Tenn. Code Ann. § 29-26-122(a) requires that contemporaneously with the filing of a complaint under Tennessee's Medical Malpractice Act, a plaintiff or plaintiff's counsel must file a certificate that a competent medical expert witness has been consulted and has provided a signed statement expressing a professional belief that there is a good faith basis to maintain the suit.

2

stricken has no possible relation to the controversy." *Id.* Courts generally "disfavor" motions to strike. *Bell v. Providence Cmty. Corr., Inc.*, No. 3:11-00203, 2011 U.S. Dist. LEXIS 61583, at *21 (M.D. Tenn. June 7, 2011) (citing *Lopez v. Metro. Gov't of Nashville*, No. 3:07-0799, 2008 U.S. Dist. LEXIS 26783, at *7 (M.D. Tenn. Apr. 1, 2008); *Baker v. Shelby Cnty. Gov't*, No. 05-2798 B/P, 2008 U.S. Dist. LEXIS 6010, at *10 (W.D. Tenn. Jan. 28, 2008)).

**III. ANALYSIS**

Plaintiffs move to strike Defendants' First Defense for failure to state a claim upon which relief can be granted, Fourth Defense for comparative fault, and Fifth Defense for failure to comply with § 29-26-122(a). (Doc. No. 15 at 3-7.) The Court will address each affirmative defense in turn.

*A. First Defense for Failure to State a Claim Upon Which Relief Can Be Granted*

Defendants' First Defense states, "The complaint fails to state a claim upon which relief can be granted." (Doc. No. 12 at 1.) Plaintiffs argue that Defendants' First Defense should be stricken because it is a conclusory allegation "with no basis under the law and no facts to support it" and because it is immaterial. (Doc. No. 15 at 7.) Defendants respond that Plaintiffs' request to strike the First Defense is inappropriate at this stage of litigation, as the parties have not yet conducted any discovery. (Doc. No. 16 at 10-11.)

This Court recently addressed an identical affirmative defense and declined to strike it. *See Sony/ATV Music Publ'g LLC v. D.J. Miller Music Distribs., Inc.*, No. 3:09-cv-01098, 2011 WL 4729807, at *5 (M.D. Tenn. Oct. 7, 2011). The Court finds no reason to deviate from its prior analysis:

> The Federal Rules . . . do not prohibit raising "failure to state a claim" as an affirmative defense. Rule 12(h)(2)(A) permits a party to raise "failure to state a claim" in "any pleading allowed or ordered under Rule 7(a)," which includes the Answer. Moreover, courts in this Circuit have accepted "failure to state a claim"

as an affirmative defense. *See Hughes v. Lavender,* No. 2:10–cv–674, 2011 U.S. Dist. LEXIS 79710, at *11 (S.D. Ohio July 20, 2011); *United States SEC v. Thorn,* No. 2:01–cv–290, 2002 U.S. Dist. LEXIS 21510, at *12 (S.D. Ohio Sept. 30, 2002).

*Id.*

The Court also noted prior rulings from this District that the traditional pleadings standards are not applicable to affirmative defenses. *Id.* at *4 (citing *McLemore v. Regions Bank*, No. 3:08-cv-00021, 2010 WL 1010092, at *13 (M.D. Tenn. Mar. 18, 2010)). Rather, "fair notice" is the appropriate standard for determining whether a defendant has sufficiently pleaded an affirmative defense. *McLemore*, 2010 WL 1010092, at *14. Thus, "'[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense.'" *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1274). The Court finds that Defendants have given fair notice of their defense, and, because striking affirmative defenses is disfavored, declines to strike Defendants' First Defense in this case. The Court therefore **DENIES** Plaintiffs' Motion as to Defendants' First Defense.

### B. *Fourth Defense for Comparative Fault*

Plaintiffs also move the Court to strike Defendants' Fourth Defense for comparative fault, which states:

> The fault of the driver of the vehicle that was involved in the accident with Mr. Robles' vehicle on October 18, 2008 (presently believed to be an individual named Charles Taylor), and any other third party who caused or contributed to the injuries alleged in this action in any way, must be compared to any fault found to exist on the part of defendants under the doctrine of comparative fault.

(Doc. No. 12 at 7.) Plaintiffs argue that the Fourth Defense is improper because there is no legal basis for the fact-finder to compare Defendants' fault with that of the driver and comparative fault with "any other third party" is impermissibly vague. (Doc. No. 15 at 3.)

4

1. Comparative Fault Against the Driver

Plaintiffs contend that this case is similar to a case decided in the Tennessee Supreme Court, *Mercer v. Vanderbilt University, Inc.*, 134 S.W.3d 121 (Tenn. 2004). (Doc. No. 15 at 4.) The patient that was the subject of the litigation in *Mercer* similarly suffered an anoxic brain injury at Vanderbilt University Medical Center following a car accident. 134 S.W.3d at 126. The Tennessee Supreme Court held that the patient's negligence in causing the car accident could not be compared to Vanderbilt's negligence, stating generally, "We therefore hold that a patient's negligent conduct that occurs prior to a health care provider's negligent treatment and provides only the occasion for the health care provider's subsequent negligence may not be compared to the negligence of the health care provider." *Id.* at 130. The court agreed with the reasoning of other courts that

> It would be anomalous to posit, on the one hand, that a health care provider is required to meet a uniform standard of care in its delivery of medical services to all patients, but permit, on the other hand, the conclusion that, where a breach of that duty is established, no liability may exist if the patient's own preinjury conduct caused the illness or injury which necessitated the medical care.

*Id.* at 129 (quoting *Harvey v. Mid-Coast Hosp.*, 36 F. Supp. 2d 32, 38 (D. Me. 1999)). The court also adopted the reasoning that "'patients who may have negligently injured themselves are nevertheless entitled to subsequent non-negligent medical treatment and to an undiminished recovery if such subsequent non-negligent treatment is not afforded.'" *Id.* at 130 (quoting *Fritts v. McKinne*, 934 P.2d 371, 374 (Okla. Ct. App. 1996)).

Plaintiffs urge the Court to extend the holding of *Mercer* to the negligence of the third-party driver who may have caused Mr. Robles' car accident and find that any negligence on the part of Vanderbilt stands on its own. (Doc. No. 15 at 4.) Defendants respond that the holding in *Mercer* is limited to comparing fault to the patient himself, while the affirmative defense at issue

here involves an original third-party tortfeasor. (Doc. No. 16 at 5.) Defendants argue that a subsequent decision from the Tennessee Supreme Court, *Banks v. Elks Club Pride of Tennessee 1102*, 301 S.W.3d 214 (Tenn. 2010), suggests that *Mercer* does not apply in such situations. (*Id.* at 6.)

The plaintiff in *Banks*, a guest of a private club, was injured on the club's premises and required surgery as a result of her injuries. 301 S.W.3d at 216. Following surgery, the plaintiff was transferred to a nursing home for rehabilitation. *Id.* While a patient at the nursing home, the plaintiff developed a serious infection. *Id.* The plaintiff sued the private club, and the trial court denied the club's motion to amend its answer in order to assert an affirmative defense of comparative fault against the nursing home. *Id.* at 217. According to the Tennessee Supreme Court, the trial court found that the amendment would be futile under Tennessee's "original tortfeasor rule." *Id.* The Supreme Court explained that the rule is a combination of two principles: (1) "'if one is injured by the negligence of another, and these injuries are aggravated by medical treatment . . . the negligence of the wrongdoing causing the original injury is regarded as the proximate cause of the damage subsequently flowing from the medical treatment'"; and (2) an original tortfeasor is jointly and severally liable for the full extent of the injuries caused by the original and successive tortfeasors. *Id.* at 217 n.3 (quoting *Transports, Inc. v. Perry*, 414 S.W.2d 1, 4-5 (Tenn. 1967)).

The Supreme Court affirmed that, in light of its adoption of a comparative fault regime, the second principle has become obsolete insofar as "the doctrine of joint and several liability no longer applies to circumstances in which separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury." *Id.* at 223. However, the court confirmed that the first principle stands as the law "with regard to liability of tortfeasors for

injuries caused by subsequent medical treatment for the injuries they cause." *Id.* The rule is, therefore, "that an actor whose tortious conduct causes physical harm to another is liable for any enhanced harm the other suffers due to the efforts of third persons to render aid reasonably required by the other's injury, as long as the enhanced harm arises from a risk that inheres in the effort to render aid." *Id.*

The Supreme Court went on to address the intersection of its ruling and its previous opinion in *Mercer*. The court distinguished its concern in *Mercer* of preventing recovery for injured patients who were found to be more than fifty percent at fault from cases like *Banks*, in which the application of comparative fault would not prevent recovery but would simply enable the trier of fact to apportion the fault between the alleged tortfeasors. *Id.* at 226. The court also found that not holding original tortfeasors liable for enhanced injuries caused by medical treatment "would be contrary to the basic tenets of Tennessee tort law, more than one century of Tennessee common-law precedents, and the general principles of liability reflected in the Restatement of Torts." *Id.* The court concluded that "[p]ersons who are negligent are liable for the natural and probable consequences of their conduct, as long as their conduct was a substantial factor in bringing about the plaintiff's injury, the injury was reasonably foreseeable, and there is no statute or policy relieving them of liability." *Id.*

The Court agrees with Defendants that the ruling in *Banks* casts doubt onto the applicability of *Mercer* to the current case. From these two decisions, the Court cannot conclude as a matter of law that the Tennessee Supreme Court would or would not allow the application of comparative fault to the instant facts; in fact, if Defendants pursue this defense after discovery, the issue may require certification to the Supreme Court for resolution. The Court does extrapolate from *Banks* that Tennessee tort law distinguishes between cases in which multiple

7

tortfeasors contribute to a single, indivisible injury, and cases in which the tortfeasors cause separate, discrete injuries. In juxtaposing joint and several liability with comparative fault, the Supreme Court implies that the doctrine of comparative fault would not apply in the latter situation. The court's validation of the application of comparative fault to original tortfeasors in malpractice cases was also conditioned on the additional injury arising from a risk that is inherent to the medical treatment. Finally, the Supreme Court assumed a situation in which the original tortfeasor's conduct was a substantial factor in bringing about the plaintiff's injury and the injury was reasonably foreseeable.

The Court therefore infers from *Banks* that Defendants may be precluded under Tennessee law from using the comparative fault defense if they cannot show that (1) Mr. Robles' anoxic brain injury was indivisible from his injuries sustained in the car accident, (2) the brain injury was an inherent risk arising from medical treatment of Mr. Robles' original injuries, and (3) the driver's conduct was a substantial factor in bringing about the brain injury and the brain injury was reasonably foreseeable. The Court cannot, however, determine these issues as a matter of law and conclude that Defendants' affirmative defense is futile without discovery on the underlying facts. As the Court finds no principle from *Mercer* or *Banks* that definitively bars Defendants from pleading the affirmative defense of comparative fault at this time, the Court declines to strike the Fourth Defense on those grounds.

    2. <u>Comparative Fault Against Other Third Parties</u>

Plaintiffs argue that Defendants' attempt to allege comparative fault against "any other third party" is insufficient under the requirements for raising the affirmative defense. (Doc. No. 15 at 5.) Plaintiffs assert that under *Free v. Carnesdale*, 110 F.3d 1227, 1231 (6th Cir. 1997), a defendant's answer must (1) specifically identify comparative fault as a defense upon which the

defendant intends to rely, (2) identify by name or description the person or entity alleged to have been at fault, and (3) set forth any facts that could constitute negligence on the part of such person or entity. (*Id.*)  Plaintiffs argue that the Fourth Defense contains a "conclusory allegation" in violation of the law. (*Id.*)  Further, Plaintiffs argue that it would be impossible to amend their Complaint to sue unknown third parties. (*Id.*) Plaintiffs contend that this could preclude suit of later-identified third parties under Tenn. Code Ann. § 20-1-119, which does not extend the applicable statute of repose for amending complaints. (*Id.*)

Defendants respond that Plaintiffs' request is premature.  Defendants argue that the parties have not yet engaged in discovery, and as a result, Defendants have no information regarding what happened to Mr. Robles before or after his stay at Vanderbilt or his cause of death. (Doc. No. 16 at 6.)  Defendants contend that Plaintiffs' reliance on *Free v. Carnesale* is misplaced, and instead offer *Damron v. ATM Central, LLC*, No. 1:10-cv-01210, 2010 WL 6512345, at *1 (W.D. Tenn. Oct. 29, 2010). (*Id.* at 7.)  In *Damron*, the court held that a defendant's affirmative defenses were sufficiently pleaded under the Sixth Circuit's "fair notice" standard, and also found that striking the defenses would be inappropriate before any discovery had occurred.  2010 WL 6512345, at *2.  Defendants also assert that the statute of repose has not yet expired on any of Plaintiffs' claims, and the potential of a future time limitations issue is insufficient to strike Defendants' affirmative defense at this time. (*Id.* at 7.)

Despite Defendants' argument to the contrary, the Court finds the Sixth Circuit's holding in *Free v. Carnesale* to be on point.  The Sixth Circuit found that it was reversible error to have allowed a defendant-doctor to assert the comparative fault of another doctor at trial where the defendant's answer did not identify the doctor by name or description, and set forth no facts indicating that the other doctor was negligent.  110 F.3d at 1231.  In this situation, there is

9

tension between the two concerns of affording a plaintiff fair notice of the basis of the affirmative defense and allowing a defendant time for discovery prior to ruling on its defenses. The Sixth Circuit, however, impliedly found that this dispute should be resolved in favor of fair notice with regard to the affirmative defense of comparative fault under Tennessee law.[2]

The Court notes that since Plaintiffs filed their Motion to Strike, Magistrate Judge Griffin held an initial case management conference with the parties. (Doc. No. 17.) Magistrate Judge Griffin subsequently entered an order allowing the parties to amend their pleadings without a motion by November 1, 2011, or by motion until July 2, 2012. (Doc. No. 18.) Defendants therefore have substantial time in which to conduct discovery on third parties against which they may allege comparative fault and to amend their Answer accordingly.

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion insofar as it **STRIKES** the portion of Defendants' Fourth Defense alleging comparative fault against unidentified third parties, and **DENIES** Plaintiffs' Motion as to the portion of Defendants' Fourth Defense alleging comparative fault against the third-party driver involved in Mr. Robles' car accident.

*C. Fifth Defense for Failure to Comply with § 29-26-122(a)*

Finally, Plaintiffs move the Court to strike Defendants' Fifth Defense for Plaintiffs' failure to file a certificate of good faith in the state proceedings. Defendants' Answer states:

> Plaintiffs' claims are barred by their failure to comply with the requirements of Tenn. Code Ann. § 29-26-122(a) when they filed their complaint asserting the same claims in Circuit Court for Davidson County, Tennessee, Docket No. 10-C-821, on March 4, 2010.

(Doc. No. 12 at 7.) Plaintiffs argue that this defense should be stricken because this issue has already been decided by the Tennessee Court of Appeals. (Doc. No. 15 at 6.) Plaintiffs assert

---

[2] The court's opinion in *Damron* did not indicate what type of affirmative defense it was ruling on or quote the defense. The Court cannot, therefore, assume that it was identical or even analogous to Defendants' Fourth Defense in this case. Nor can the Court rely on the *Damron* opinion in order to vary from the Sixth Circuit's ruling in *Free*.

10

that the Court of Appeals' decision is therefore binding upon the parties in this litigation and precludes re-litigation of the issue in this forum. (*Id.*) In resolving Defendants' appeal of the entry of non-suit in the state court proceedings, the Court of Appeals stated:

> In the event the plaintiff re-files the suit, it proceeds as a new action, subject only to the provision regarding payments of costs at Tenn. R. Civ. P. 41.04. The fact that plaintiff did not file the certificate with the original complaint is of no consequence; a new action must stand or fall on its own.

*Robles v. Vanderbilt Univ. Med. Ctr.*, No. M2010-01771-COA-R3-CV, 2011 WL 1532069, at *3 (Tenn. Ct. App. Apr. 19, 2011).

Defendants argue that the Court of Appeals was only required to rule on whether the Circuit Court erred in allowing Plaintiffs to circumvent § 29-26-122 by voluntarily non-suiting their lawsuit, and that the above-quoted portion of its opinion is therefore non-binding dicta. (Doc. No. 16 at 9.) Defendants further argue that even if the Court of Appeals' statement were more than dicta, this Court would not be required to follow it. (*Id.*) Defendants contend that "[i]f this Court examines the underlying merits and rationale of a decision by the Tennessee Court of Appeals and believes that the Tennessee Supreme Court would not reach the same conclusion, this Court is free to reach a different result." (*Id.*)

The Court finds Defendants' Fifth Defense to be redundant, regardless of the application of *res judicata* principles. The Tennessee Court of Appeals has repeatedly held that the traditional rule allowing a plaintiff to voluntarily dismiss and re-file a suit applies to cases under the Medical Malpractice Act that are subject to the good-faith certificate requirement. *See Cude v. Herren*, No. W2010-01425-COA-R3-CV, 2011 WL 4436128, at *3 (Tenn. Ct. App. Sept. 26, 2011); *Myers v. AMISUB (SFH), Inc.*, No. W2010-00837-COA-R9-CV, 2011 WL 664753, at *1 (Tenn. Ct. App. Feb. 24, 2011); *Barnett v. Elite Sports Med.*, No. M2010-00619-COA-R3-CV, 2010 WL 5289669, at *1 (Tenn. Ct. App. Dec. 17, 2010). These cases presented a different issue

than the case at bar – the Court of Appeals was called on to decide whether cases that were non-suited before the enactment of the good-faith certificate requirement and re-filed after its enactment were subject to the requirement. The court continuously emphasized, however, that a re-filed malpractice suit is an entirely new and separate action from the non-suited action. *Cude*, 2011 WL 4436128, at *3; *Myers*, 2011 WL 664753, at *8; *Barnett*, 2010 WL 5289669, at *2. In the cited cases, this principle was relevant to whether the re-filed suits were subject to the new certificate requirement. Nevertheless, the Court of Appeals has now stated in its decision on the state court predecessor of this litigation that the principle extends to the current situation. Regardless of whether that decision is binding on this Court as law or binding on the specific parties by issue preclusion, this Court would follow the Court of Appeals' lead in interpreting its own law and reject Defendants' defense that Plaintiffs' claims are precluded by § 29-26-122. Defendants' affirmative defense stated in its Answer is therefore futile.

Further, even if Plaintiffs' failure to file a certificate of good faith at the state level were relevant to their properly re-filed federal action, courts excuse noncompliance with the Medical Malpractice Act's technical requirements when the purposes of the requirement have been met. *See Howell v. Claiborne & Hughes Health Ctr.*, No. M2009-01683-COA-R3-CV, 2010 WL 2539651, at *17 (Tenn. Ct. App. June 24, 2010) (excusing non-compliance with the Act's sixty-day notice requirement in a re-filed suit because the original suit served the purpose of giving adequate notice and the plaintiff complied with the good-faith certificate requirement); *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 639 (E.D. Tenn. 2010) (same). The purpose of the good-faith certificate requirement is to avoid frivolous malpractice lawsuits by requiring a professional's initial evaluation of the merits. *Howell*, 2010 WL 2539651, at *16; *Jenkins*, 683 F. Supp. 2d at 639. In cases in which Tennessee courts did not excuse non-compliance with the certificate

requirement, the plaintiff failed to ever file a certificate of good faith. *See Cude*, 2011 WL 4436128, at *5; *Myers*, 2011 WL 664753, at *8; *Barnett*, 2010 WL 5289669, at *2. Here, in contrast, Plaintiffs have properly filed a certificate of good faith, meeting the statutory purpose of avoiding frivolous lawsuits. *See Truth v. Eskioglu*, 781 F. Supp. 2d 630, 635 (M.D. Tenn. 2011) (granting an extension to file a certificate of good faith in part because there was evidence of malpractice and the case was therefore not the type of frivolous suit that § 29-26-122(a) is intended to prevent).

In light of the above analysis, the Court finds that Defendants' Fifth Defense is futile under Tennessee law. The Court therefore **GRANTS** Plaintiffs' Motion and **STRIKES** Defendants' Fifth Defense.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion in part and **STRIKES** Defendants' Fifth Defense and the portion of the Fourth Defense alleging comparative fault against unidentified third parties. The Court **DENIES** Plaintiffs' Motion as to Defendants' First Defense and the portion of the Fourth Defense alleging comparative fault against the third-party driver.

It is so ORDERED.

Entered this the __10th_____ day of November, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

13